STOKER, Judge.
This is an appeal by plaintiff, Raoul Bil-leaud, a 73 year old school crossing guard who was injured when struck by a vehicle driven by defendant, William H. Perry. The appeal is from a jury award of $17,-081.12 and a decision of the trial court with respect to apportionment of the award between plaintiff and the workmen’s compensation carrier of plaintiff’s employer.
The issues posed by this appeal are as "follows:
(1) Was the jury award inadequate, and if so, did the jury abuse the “much discretion” allowed it in fixing damage awards under the tests laid down in various cases including Bitoun v. Landry, 302 So.2d 278 (La.1974) and Coco v. Winston Industries, 341 So.2d 332 (La.1977).
(2) Was the judgment of the trial court correct in its apportionment of the award of $17,081.12 under LSA-R.S. 23:1103 between Raoul Billeaud, plaintiff, and Northern Insurance Company, intervenor, with respect to the recovery of workmen’s compensation already paid and for that which the interve-nor was obligated to pay in the future.
The question of liability is not at issue in this appeal.
THE JURY’S AWARD OF DAMAGES
Plaintiff was injured on March 5, 1975. He was 78 years old and was employed by the City of Lafayette as a school crossing guard. In the course of his duties on East Simcoe Street in Lafayette he was struck by a 1969 Ford van. He was propelled into the air and thrown to the pavement. Plaintiff was hospitalized from March 5, 1975, (date of the accident) until March 17, 1975, *1381 at which time he was discharged to the care of his daughter. Plaintiff’s physician, Dr. Arthur Vidrine, described plaintiffs injuries and condition at this point as follows:
The patient is a 78 year old male who on March 5, 1975, was hit by a car. The patient suffered an abrasion of his left knee, severe contusion on his left thigh, multiple lacerations of his forehead and avulsion of his portion of his right lower lip. The lacerations were sutured in the ER. X-rays of his chest, cervical spine, skull, base and lumbar spine were essentially normal. However, the patient did have a fractured nose for which he was seen by Dr. Charles LeBlanc.
In addition, because of high blood pressure and large heart, he was seen by Dr. Sullivan and since the patient had hema-turia, IVP was done which was essentially normal. The patient has done exceptionally well. His sutures are out of his facial laceration. He now has a lumbo-sacral support for his back which did cause his greatest trouble while in the hospital and he is being discharged to his daughter on March 17. He is to return to my office in one week. The only medication he is being sent home on is Darvon Compound 65, one every four hours as needed for pain. (Tr. p. 427, 1.25 — Tr. p. 428, 1.14)
Subsequently, further injuries were revealed consisting of two fractured ribs (discovered through x-ray on March 25,1975), a large bruise on the left thigh and a bruised kidney. Plaintiff underwent a second period of hospitalization from May 11 to May 22, 1975. After this period of hospitalization, plaintiff apparently suffered no further distress as a result of the bruised kidney. Dr. Vidrine described the course of medical treatment followed in Mr. Bil-leaud’s case as conservative treatment consisting of bed rest, medication, hot baths, compacts and back brace. This medication consisted of Darvon, a non-narcotic analgesic stronger than aspirin but not as strong as Codeine.
Plaintiff had a pre-existing arthritic condition which was not symptomatic prior to the accident. Subsequent to the accident, the arthritic condition became symptomatic. Mr. Billeaud also claims the accident aggravated an existing arteriosclerotic condition which has reduced him to a state of senility. He complains of memory lapses and episodes of dizziness.
Plaintiff’s counsel makes a most persuasive argument to the effect that, over and above plaintiff’s pain and suffering, past and future, Mr. Billeaud has suffered an extraordinary mental and emotional reversal in his life-style. Counsel urges as follows: “At the time before the collisional impact this seventy-eight year old gentlemen was agile, physically active, totally self-sustaining and had a great joie de vivre.” It is urged that at the time of the injuries Mr. Billeaud possessed the physical vigor, mental and emotional outlook and self-sufficiency of a person half his age. As a result of the injuries it is urged that he was suddenly reduced to an infirm condition physically, mentally, emotionally and that, in place of being self-sufficient and able to completely care for himself, he is now a brooding dependent. Counsel’s brief sets forth his claims in this regard as follows:
Notwithstanding his age, he was a physically vigorous and mentally alert person. In fact he was gainfully employed as a school crossing guard for eight years previous to the occurrence of the accident in question. He was a totally self-sufficient person before this accident. He did everything for himself. He lived in his own home, and he maintained his home. He had a four bedroom home at the time. In addition to that he had a living room, dining room, kitchen and a bathroom. He cooked for himself, washed his own clothes. In this connection he didn’t have any dryer so he hung out his clothes to dry. He would get down on his hands and knees and wax the wooden floors of his house. He wet *1382 mopped his house daily. He picked figs from his fig tree and canned them. He canned figs for himself and for his children. He also had a garden. He owned an automobile and he drove it. Rather than mail his check in payment for bills, he drove his car and made personal appearance to pay his bills. He was a handyman as well and fixed his television antenna when it needed repair.
He had an active social life. He was an usher at his church. He played cards with his friends and once in a while went dancing with his female friends. He was an avid talker, kept abreast with world events and talked life and events occurring about him. He loved life and he loved to visit and talk to his friends. His memory was excellent and his speech was clear.
Then the accident occurred. And everything about his life changed overnight. He was racked with pain. His previously nondisabling condition of arte-rio sclerosis was aggravated. This aggravation brought about senility. His previously nondisabling and nonsymptomatic arthritis was aggravated. Now he can no longer walk or move without excruciating pain. He can no longer drive his car. He can no longer maintain his home. He can no longer live alone. He can no longer cook, wax the floors, wash his clothes or even attend to himself. He has had to move out of his home and move in with his daughter so that someone could take care of him. Now his speech is not the same, his interest is down to zero. He communicates very little. Now he is an old senile person, robbed of his joie de vivre, robbed of a clear intellect, robbed of physical agility, robbed of a pain free body. Now he is depressed. Now he cries softly in desperation over his great loss, “saying that he just as soon be dead as not to be able to do for himself and having to be dependent” on others. He lives and broods now in the vacuum and solitude of melancholy, spawned by the oppression of a pain-racked body and a dull-witted mind. At the moment in his life when time is precious, he can no longer reach out and enjoy the aesthetic beauty of nature, the exhilaration of sure-footed physical motion, the inestimable human dignity of independence and self-sufficiency and the warmth and glow of meaningful companionship and communication with his fellow man and for such consummate damage the jury awarded to him the paltry sum of SEVENTEEN THOUSAND EIGHTY-ONE AND 12/100 ($17,081.12) DOLLARS. Such a verdict instances either a gross insensitivity to the consummate nature of his injuries or an abysmal incomprehension of what the law requires as just compensation. In either ease, the award instances a clear abuse of discretion
Despite the moving appeal made on plaintiff’s behalf, this court must be mindful of the fact that the jury in this case heard the case first hand. It saw Mr. Billeaud and his witnesses. The same arguments quoted above were made to the jury and plaintiff’s counsel is most articulate and quite persuasive. In view of counsel’s exceptional skill it is hardly possible that the merits of plaintiff’s ease escaped the jury’s attention. Our review of the record fails to disclose that the jury award of $17,081.12 was not within the “much discretion” accorded to trier of fact in assessment of damages. Article 1934, Louisiana Civil Code. Gaspard v. LeMaire, 245 La. 239,158 So.2d 149 (1963); Ballard v. National Indemnity Company of Omaha, Neb., 246 La. 963, 169 So.2d 64 (1964); Lomenick v. Schoeffler, 250 La. 959, 200 So.2d 127 (1967); Anderson v. Welding Testing Laboratory, Inc., 304 So.2d 351 (La.1974); Bitoun v. Landry, 302 So.2d 278 (La.1974); Revon v. American Guarantee & Liability Ins. Co., 296 So.2d 257 (La.1974); Spillers v. Montgomery Ward & Co., 294 So.2d 803 (La. 1974); Boutte v. Hargrove, 290 So.2d 319 (La.1974); Fox v. State Farm Mutual Automobile Ins. Co., 288 So.2d 42 (La.1973); *1383 Walker v. Champion, 288 So.2d 44 (La. 1973); and Miller v. Thomas, 258 La. 285, 246 So.2d 16 (1971).
In any event, we do not find such facts as would permit us to reconsider and disturb the award under the principles and guide lines laid down in Coco v. Winston Industries, 341 So.2d 332 (La.1977). Under this case the record must clearly reveal that the trier of fact abused its discretion. Thereafter, the permissible limits within which appellate courts may make adjustments are quite limited.
Accordingly, we will affirm the jury award.
APPORTIONMENT OF AWARD BETWEEN PLAINTIFF AND THE WORKMEN’S COMPENSATION CARRIER
Plaintiff-appellant contends that the judgment of the trial court results in granting the entire recovery in this case to the workmen’s compensation carrier, Northern Insurance Company. Such would appear to be the effect of the judgment. In conformity with instructions submitted to the jury by the trial judge in the form of interrogatories, the jury found and rendered a verdict in favor of Northern Insurance Company for $5,981.12. Northern, compensation carrier for the City of Lafayette, intervened in this suit. The award of $5,981.12 represented workmen’s compensation benefits and medical payments paid to or on behalf of plaintiff as of the date of trial. The judgment on the jury verdict, entered and signed on May 20, 1976, awarded Northern Insurance Company the sum of $5,981.12 plus legal interest from date of judicial demand until paid. This award was ordered paid by preference and priority to Northern out of the $17,081.12 awarded to plaintiff.
Northern Insurance Company applied for a new trial. Alternatively, it sought an amendment of the judgment on the issue of whether the intervenor was limited in its recovery to what it had expended up to the date of trial or whether it should be granted judgment for sums expended subsequent to the trial. As a result of the hearing on the application for new trial or an amendment of the judgment, the trial court amended its judgment on November 17, 1976. The pertinent amendment read as follows:
IT IS FURTHER ORDERED, ADJUDGED AND DECREED, that there be judgment rendered in favor of Raoul Bil-leaud and against United States Fidelity & Guaranty Company and William H. Perry, jointly, severally and in solido in the full sum of ELEVEN THOUSAND AND ONE HUNDRED NO/100 ($11,-100.00) DOLLARS, together with legal interest from date of judicial demand until paid and for all costs of these proceedings.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that there be judgment rendered herein in favor of Northern Insurance Company and against William H. Perry and United States Fidelity & Guaranty Company, jointly, severly and in solido in the full sum of FIVE THOUSAND NINE HUNDRED EIGHTY-ONE AND 12/100 ($5,981.12) DOLLARS (representing compensation and medical expenses paid through the date of the trial) together with legal interest thereon from date of judicial demand until paid on those compensation benefits and medical expenses that were owing at the time suit was filed and with legal interest thereon from each subsequent payment made by Northern Insurance Company as compensation benefits and medical expenses became due after suit was filed with all costs to be paid for by William H. Perry and United States Fidelity & Guaranty Company.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that there be judgment rendered herein in favor of Northern Insurance Company and *1384 against plaintiff Raoul Billeaud and defendants United States Fidelity & Guaranty Company and William H. Perry, jointly, severly and in solido for such additional amounts Northern Insurance Company may be required to pay as workmen’s compensation benefits to or for and on behalf of Raoul Billeaud together with legal interest thereon as each payment becomes due, until paid, not to exceed the sum of $11,100.00, the same to be paid out of the judgment in favor of Raoul Billeaud as a first preference and priority and with all costs to be paid for by United States Fidelity & Guaranty Company and William H. Perry.
We are not certain how the judgment of November 17, 1976, was intended to be implemented. If the judgment is allowed to stand, a sum certain will have been expended by the compensation carrier at such time as the judgment shall become final. More than likely the workmen’s compensation carrier will then still owe compensation benefits to plaintiff and possibly additional medical benefits which could accrue after the date the judgment becomes final. The carrier, Northern Insurance Company, argues that its rights under the judgment should be “open-ended”. It contends that it is entitled, not only to reimbursement up to the total amount actually paid at the time the judgment becomes final, but “also for any additional sums they might have to pay and that the judgment against all parties should have been ‘open ended’.”
It is unclear as to what should happen to that portion of the tort recovery in an amount represented by workmen’s compensation at the open end, that is, that which may accrue after judgment becomes final. The liability carrier, United States Fidelity and Guaranty Company, could arguably retain this amount and remit it piece-meal to Northern Insurance Company as it makes payments of compensation to Mr. Billeaud. Without speculation on further possibilities, we hold that the judgment leaves the situation ambiguous. It will require amendment.
The briefs of counsel appear to be in agreement as to the applicable law. The applicable statutory provision of the Louisiana Workmen’s Compensation Law is LSA— R.S. 23:1103. Plaintiff relies on the following cases from the jurisprudence. Barrios v. Service Drayage Co., 250 So.2d 135 (La. App. 4th Cir., 1971); Hall v. Hartford Accident & Indemnity Co., 278 So.2d 795 (La. App. 4th Cir., 1973), writ refused 281 So.2d 753 (La.) and Burley v. Louisiana Power and Light Co., 327 So.2d 585 (La.App. 4th Cir., 1976), writs refused 332 So.2d 278 (La.). The intervenor relied on the Hall and Barrios cases in its application for new trial or amendment of the judgment. Defendants, William H. Perry and USF&G rely on the Hall case. The Hall case states the following:
The trial court judgment awarded Hall’s workmen’s compensation insurer the amount of all benefits paid through the date of trial, to be deducted from the amount of plaintiff’s judgment. The insurer appealed, asserting that it should have been allowed a continuing credit, since it continued to pay benefits after completion of the trial and during the course of this appeal.
A compensation insurer intervening in an action by the employee against a third party is entitled to reimbursement of all benefits paid to the employee, including those paid subsequent to the date of trial. R.S. 23:1103; Barrois v. Service Drayage Co., 250 So.2d 135 (La.App. 4th Cir. 1971). We accordingly amend the judgment to grant the intervening insurer the reimbursement for all amounts paid as workmen’s compensation benefits, including those paid subsequent to the date of the judgment of the trial court.
From the cases of Hall and Barrios, it is clear that a compensation carrier is entitled to be reimbursed all it has actually paid out to the injured party as of the date the judgment becomes final. We are of the opinion that any excess of the award should be paid to the injured party. Thereafter, *1385 the compensation carrier should be given a credit on all sums it may come to owe in the future to, or on behalf of, the injured party up to the extent of payment of the tort recovery to the injured party. Until this excess is exhausted, the carrier should be obligated to make no further compensation payments or medical benefits. After exhaustion of the excess, if further compensation payments or benefits should become due, the carrier should then become obligated to resume payments.
In view of the foregoing, we will affirm the lower court’s judgment of November 17, 1976, except as it apportions the judgment. The judgment will be amended to delete the three paragraphs of the judgment quoted above. In place thereof we amend the judgment to substitute the following:
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that there be judgment herein in favor of plaintiff, Raoul Billeaud, and against defendants, William H. Perry and United States Fidelity and Guaranty Company, severally and in solido, in the full sum of $17,081.12 together with legal interest from date of judicial demand until paid and for all costs of these proceedings, less the amount awarded in the following paragraph to intervenor, Northern Insurance Company.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED, that there be judgment herein in favor of Northern Insurance Company, intervenor herein, and against William H. Perry and United States Fidelity and Guaranty Company, in solido, in the full sum of the amount Northern Insurance Company has actually paid, or will actually pay prior to the date of the satisfaction of this judgment, to or on behalf of Raoul Billeaud as weekly workmen’s compensation benefits and medical expenses (which sum, as of April 22,1976, was $5,981.12), plus interest at the rate of 1% per annum on the amount of each payment of benefit which was or will be made by defendants, William H. Perry and United States Fidelity and Guaranty Company from the date of each payment until payment of the amounts awarded in this judgment, the sum to be paid to Northern Insurance Company to be paid by preference and priority out of the award made herein to plaintiff, Raoul Billeaud.
IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that such portion of the amount of the judgment herein in favor of Raoul Billeaud which exceeds the amount which National Insurance Company is entitled to be paid shall be credited against any obligation which Northern Insurance Company may owe to Raoul Bil-leaud for future workmen’s compensation benefits, medical expenses, or otherwise accruing after the date of the satisfaction of this judgment.
AMENDED AND AFFIRMED AS AMENDED.