STATE OF LOUISIANA

COURT OF APPEAL, THIRD CIRCUIT

05-808

CLIFFORD C. BAKER, ET UX.

VERSUS

STATE OF LA, DEPT. OF HEALTH AND HUMAN RESOURCES, ET AL.

********

APPEAL FROM THE
NINTH JUDICIAL DISTRICT COURT
PARISH OF RAPIDES, NO. 207,567
HONORABLE F. RAE SWENT, DISTRICT JUDGE
********

GLENN B. GREMILLION
JUDGE

********

Court composed of Sylvia R. Cooks, Glenn B. Gremillion, and Elizabeth A. Pickett, Judges.

Cooks, J., Dissents without written reasons.

AFFIRMED.

Michael L. Glass
1733 White Street
Alexandria, LA 71301
(318) 484-2917
Counsel for Plaintiff/Appellant:
    Clifford C. Baker
    Sarah Lenora Baker

**Charles H. Munsterman**
**3600 Jackson St., Suite 105**
**Alexandria, LA 71303-3096**
**(318) 487-4972**
**Counsel for Plaintiff/Appellant:**
    **Clifford C. Baker**
    **Sarah Lenora Baker**

**John Albert Ellis**
**Laurel I. White**
**Louisiana Dept. of Justice, AAG**
**P. O. Box 1710**
**Alexandria, La 71309**
**(318) 487-5944**
**Counsel for Defendant/Appellee:**
    **Huey P. Long Medical Center**
    **State of LA, Dept. of Health and Human Resources**

GREMILLION, Judge.

The plaintiffs, Clifford C. Baker and Sarah Baker, appeal the judgment in favor of the defendant, the State of Louisiana, Department of Health and Human Resources, finding it was not negligent for injuries suffered by Sarah in a trip and fall allegedly caused by a storm drain cover. For the following reasons, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

The Bakers filed suit in February 2002, claiming that on March 6, 2001, Sarah tripped and fell over an unreasonably dangerous storm drain cover in the walkway of Huey P. Long Hospital, a state-owned and run institution, in Pineville, Louisiana. Following a trial in November 2004, the jury returned a verdict in favor of the State, finding that the sidewalk did not present an unreasonable risk of harm on March 6, 2001. In December 2005, the trial court signed the judgment dismissing the Bakers' claims. The Bakers now appeal.

The Bakers assign as error:

1. The trial court's exclusion of evidence and an instruction to the jury to disregard the defendant's clear admissions of fault; and

2. The jury's finding that the State was not at fault.

## WITNESS TESTIMONY

The Bakers first argument surrounds the trial court's exclusion of testimony by several hospital employees. We note that in reviewing the trial court's evidentiary decisions, we must determine whether the rulings were erroneous and, if so, whether they prejudiced the plaintiffs' case. *See Eldridge v. Carrier,* 04-203 (La.App. 3 Cir. 11/17/04), 888 So.2d 365, *writ denied*, 04-3175 (La. 3/11/05), 896 So.2d 66. Reversal is not warranted if the error is harmless. *Id.*

1

First, the Bakers argue that James Williams, a security guard for the hospital, would have testified that he observed that the storm drain cover rocked. The trial court ruled that Williams' potential testimony that the cover rocked was not relevant in that he was not an expert witness regarding storm drain covers. Furthermore, the trial court did not want the jury to infer from his non-expert testimony that the fact that the cover rocks necessarily means that it is defective. We find no error in the trial court's ruling. Several other witnesses testified that it rocked when stepped on or would rock due to its unlevel nature. Moreover, we find the issue of whether the storm drain rocked bears little relevance in that Sarah does not claim she fell because the storm drain rocked, but because the lip on the storm drain cover was unlevel. In that regard, there was overwhelming evidence that the storm drain cover did not sit flush. The jury had ample information to determine whether or not it posed an unreasonable risk of harm without the testimony of this witness, which the trial court felt could have improperly influenced the jury. Additionally, even if we were to find that this testimony was improperly excluded, the exclusion was harmless error as similar testimonial evidence was presented by several other witnesses. Accordingly, this assignment of error is without merit.

The Bakers next argue that the trial court erred in failing to allow Millard Sanders, a safety officer and chairman of the safety committee at the hospital, to answer counsel's question as to whether the hospital bore responsibility. The trial court sustained the State's objection finding that this question invaded the province of the triers of fact.

Sanders testified that the storm drain cover is not flush with its frame and that the area in which it is located is heavily trafficked. He further testified that the storm drain cover has "a little old play in it," or rocks when you walk on it. He stated the reason for this is because the storm drain cover has settled on the foundation causing it to have about 3/8 of an inch of "play" in it. Sanders further stated he has not made any attempt to replace the storm drain cover with a new one, although he is responsible for the area in question. He testified that the 3/8 of an inch lip could cause someone to fall if approached a certain way. He stated the lip is still present today, but that he believed it could be fixed. The Bakers' counsel then asked Sanders if he agreed that "there is some responsibility on the part of the hospital," to which opposing counsel objected, and the trial court agreed that the question invaded the province of the trier of facts. We agree. The Bakers cite La.Code Evid. arts. 801(D)(2), 701, and 704 in support of their position that the trial court should have allowed this testimony.

Louisiana Code of Evidence Article 801(D)(2) declares that a statement is not hearsay "if the statement is offered against a party and is [h]is own statement, in either his individual or representative capacity." We agree with the trial court that Article 801(D)(2) has no application to this lay witness testifying as to his opinion on the ultimate issue of liability and that this article refers to statements made prior to trial by the witness.

Louisiana Code of Evidence Article 704 states that "testimony in the form of an opinion or inference otherwise admissible is not to be excluded solely because it embraces an ultimate issue to be decided by the trier of fact." The trial

3

court found that Article 704 applies to expert witnesses and that it did not apply to Sanders, who was not qualified as an expert. We also agree. On cross-examination, Sanders stated that he was appointed safety officer when the former one retired but that his primary job is as an administrative maintenance manager taking care of electrical, plumbing, air conditioning, bio-medical equipment, and utilities throughout the hospital. He further testified he has no special expertise or training in working with storm drain covers or catch basins nor does he have any engineering experience in sidewalk construction or in inserting catch basins. There is no doubt that Sanders was not qualified as an expert. Since Article 704 applies to expert witnesses, the trial court did not err in refusing to admit his testimony pursuant to that article.

Next, the Bakers argue that Article 701, which addresses the testimony of lay witnesses, applies to Sanders' testimony. Article 701 states:

If the witness is not testifying as an expert, his testimony in the form of opinions or inferences is limited to those opinions or inferences which are:

(1) Rationally based on the perception of the witness; and

(2) Helpful to a clear understanding of his testimony or the determination of a fact in issue.

The question posed by counsel was neither based on the perception of the witness nor helpful to a clear understanding of a *fact in issue*; the question pertained to the *ultimate issue*, which the trial court correctly found invaded the province of the triers of fact.

Finally, the Bakers argue that the trial court erred in excluding Terry Brouillette's testimony, who testified that the storm drain cover was "something that needs repair or attention." The State objected citing a lack of foundation and the trial

4

court sustained the objection instructing the jury to disregard the testimony. We find no error in that ruling. Brouillette testified that he is employed in grounds maintenance at the hopsital and that he mainly cuts grass and shrubbery. He stated that the storm drain cover does not sit flush and that the area was heavily traveled. We agree with the trial court that no foundation existed to elicit the opinion testimony of Brouillette as to whether or not the drain needed repair. The jury had sufficient evidence to make that determination. Accordingly, the foregoing assignments of error are without merit.

## LIABILITY

The State's liability is governed by La.Civ.Code art. 2317 as limited by La.R.S. 9:2800. Louisiana Civil Code Article 2317 states in part:

> We are responsible, not only for the damage occasioned by our own act, but for that which is caused by the act of persons for whom we are answerable, or of the things which we have in our custody.

La.R.S. 9:2800(C) states in part:

> Except as provided for in Subsections A and B of this Section, no person shall have a cause of action based solely upon liability imposed under Civil Code Article 2317 against a public entity for damages caused by the conditions of things within its care and custody unless the public entity had actual or constructive notice of the particular vice or defect which caused the damage prior to the occurrence, and the public entity has had a reasonable opportunity to remedy the defect and failed to do so.

The State is not liable for every irregularity or defect in a sidewalk that causes injury, but only for those that pose an unreasonable risk of injury. *See Clark v. Hartford Acc. and Indem. Co.,* 562 So.2d 50 (La.App. 3 Cir. 1990). In order to decide what constitutes an unreasonable risk of harm, the fact finder must weigh the social utility of the thing versus the likelihood and severity of harm. *Id.; see also*

5

*Oster v. Dep't of Transp. and Dev., State of La.,* 582 So.2d 1285 (La.1991). Whether or not the defect posed an unreasonable risk of harm must be decided on the particular facts and circumstances of the case. *Clark,* 562 So.2d 50. If it is determined that the condition presented an unreasonable risk of harm, the notice requirement of La.R.S. 9:2800 must be satisfied. *Id.* The plaintiff bears the burden of proving by a preponderance of the evidence that the State was at fault. *Id.* Moreover, a pedestrian has a duty to see that which should be seen and exercise ordinary care in her travels. *Id.*

In this case, the jury found that the sidewalk did not pose an unreasonable risk of harm. Pursuant to the well-established law, we will not set aside a jury's finding of fact in the absence of manifest error or unless it is clearly wrong. *Rosell v. ESCO*, 549 So.2d 840 (La.1989). Having reviewed the evidence, we find no manifest error in this ruling.

Sarah, who was eighty years old at the time of trial, testified that on the date in question she and her husband arrived at the hospital at around 7 a.m. in order to be with her son who was having surgery. She stated that as she was walking toward the hospital, she "tripped her toe on something in the sidewalk," and fell with her knee hitting iron. When questioned if her foot was caught on the lip of the manhole cover, Sarah testified "I just know it caught something that was sticking up in the sidewalk." She further stated that the reason she tripped was because "something was in the sidewalk and my toe hit it." Sarah stated that the she was anxious about her son's upcoming surgery.

6

Clifford, who was eighty-three years old at the time of trial, testified that Sarah "stumped her toe" on the storm drain, which was unlevel, causing her to fall and injure her knee. We note Clifford testified that he dropped Sarah off while he went to park the car and was approximately one hundred feet behind her when she fell. Clifford stated shortly before the trial he went to examine the storm drain and said that it rocked when he stepped on it. He further testified that he and his wife have been to the hospital to visit others and had not experienced any problems.

Belle Bailey, an administrative specialist and the director of risk management at the hospital, testified that if there is an incident at the hospital she is required to take photographs and prepare a report and send them to Baton Rouge. Bailey testified that she took a photograph of the sidewalk where Sarah claims to have fell. She testified that this walkway is heavily traveled by patients and employees of the hospital. Bailey also stated that she had heard that more than one other person had fallen in the same area, but that there were no incident reports.

The essence of Williams, Sanders, and Brouillette's testimony is that the storm drain cover was unlevel and rocked slightly, a fact that is not disputed by the State. It is clear from the testimony that the manhole cover is indeed unlevel, a situation that is not uncommon in this state due to the settlement of foundations over time and other reasons. In their brief and also in oral argument, the Bakers imply that this fact alone poses an unreasonable risk of harm. The Bakers point to *Boddie v. State of Louisiana,* 661 So.2d 617 (La.App. 2 Cir. 9/27/95), a case with facts similar to this one in which the State was found liable after the plaintiff tripped over an unlevel storm drain. However, this fact alone is not sufficient to deem that the storm

7

drain poses an unreasonable risk of harm. The law requires an analysis of the particular facts of each case. In *Boddie,* the plaintiff's expert engineer testified that the cover was unlevel:

> [A] condition worsened by the addition of expanded metal to the top of the drain cover. [The expert] stated that there was not a strong color contrast between the sidewalk and the drain cover, adding to the unsafe condition. [The expert] stated that the unsafe condition of the drain cover could not be easily observed.

*Id.* at 621.

The trial court in *Boddie* found that the expanded metal plate extended above the sidewalk between 3/4 of an inch to an inch and that the drain cover was gray in color, which did not contrast dramatically with the sidewalk. On the contrary, in this case, the photograph evidence shows wide bands of bold bright yellow paint surrounding the drain and sidewalk where it drops off at the curb. The storm drain cover is unlevel by 3/8 of an inch. Additionally, unlike in *Boddie,* there was no evidence that Sarah actually tripped over the unlevel cover. For these reasons, we cannot say that the jury manifestly erred in finding that the unlevel storm drain cover did not pose an unreasonable risk of harm. Accordingly, the judgment of the trial court is affirmed.

## CONCLUSION

The judgment in favor of the defendant-appellee, the State of Louisiana, Department of Health and Human Resources, is affirmed. All costs of this appeal are assessed against the plaintiff-appellant, Clifford and Sarah Baker.

**AFFIRMED.**

8